# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### at GREENEVILLE

| | | |
|---|---|---|
| BRUCE S. RISHTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-397-JRG-MCLC |
| | ) | |
| ARVIL CHAPMAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION</u>

In 2006, pro se Petitioner Bruce S. Rishton ("Petitioner" or "Rishton"), was convicted in the Sullivan County, Tennessee Criminal Court of five counts of attempted rape and incest and one count of attempted rape, pursuant to his "best interest" guilty pleas, *see North Carolina v. Alford*, 400 U.S. 25 (1970) (holding that an accused may plead guilty in his best interest, while professing his actual innocence). For these offenses, Petitioner received an effective 10-year term of imprisonment. Rishton has brought this petition for a federal writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under that Sullivan County judgment of convictions [Doc. 1].

Warden Avril Chapman has filed an answer to the petition, maintaining that, under the deferential review standards in 28 U.S.C. § 2254(d), relief is not warranted with respect to Rishton's claims and, in support of his position, has submitted copies of the state court record [Doc. 7, Attachments 7-1, 7-2; Doc. 8, Attachments 1-12]. For reasons which appear below, this petition will be **DENIED**.

## I. PROCEDURAL HISTORY

Because Rishton's convictions were based upon his guilty pleas, he did not pursue a direct appeal, but instead challenged his convictions under the Tennessee Post-Conviction Procedure Act, by means of filing on March 5, 2007, a petition for post-conviction relief. *Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704 at * 2 (Tenn. Crim. App. May 12, 2012), *perm. app. denied* (Tenn. 2012). After holding an evidentiary hearing on the claims, the state post-conviction court denied the petition and the Tennessee Court of Criminal Appeals (TCCA) affirmed the denial. *Id.*, 2012 WL 260022, at *1-3, *20. Petitioner's request for permission to appeal was likewise denied by the Tennessee Supreme Court on August 15, 2012. *Id.* at *1.

There followed this instant timely § 2254 habeas corpus application.

## II. FACTUAL BACKGROUND

The following factual recitation is taken from the TCCA's post-conviction opinion, *Id.* at *1-2.

> Authorities arrested the petitioner, Bruce S. Rishton, on August 29, 2005, and charged him in case number S51,181 with the rape of his sister-in-law, T.C., and, in case number S51,180, with the rape of his adopted daughter, H.R., who was a minor at the time. The general sessions court appointed the district public defender to represent the petitioner after his arrest. The petitioner waived a preliminary hearing on September 6, 2005, and the charges were bound over to the criminal court. In October 2005, the criminal court judge appointed the public defender to represent the petitioner in criminal court. The public defender's office filed a motion, on November 17, 2005, to reduce bond on behalf of the petitioner. The State filed a counter motion to revoke the petitioner's bond. The trial court heard the motions on December 8, 2005, and increased the petitioner's bond.
>
> On April 4, 2006, the court arraigned the petitioner in case number S51, 181 after the grand jury returned a true bill of indictment on March 15, 2006. The trial court set the petitioner's trial date for

2

June 22, 2006; however, the court subsequently removed it from the trial docket. On July 21, 2006, the court arraigned the petitioner in case number S51,180 after the grand jury returned a presentment on July 19, 2006. On July 25, 2006, the trial court removed the district public defender as counsel for the petitioner after the petitioner claimed that the public defender had failed to communicate with him. The trial court appointed private counsel to represent the petitioner.

On November 6, 2006, the petitioner entered "best interest" guilty pleas in case number S51,181 to one count of attempted rape, a Class C felony, and in case number S51,180 to five counts of incest and five counts of attempted rape, Class C felonies. The prosecutor recited the following factual basis for the pleas at the guilty plea hearing:

If we had proceeded to trial in Case No. S51,181 the State would have the following evidence. On August 29, 2005 the victim, [T.C.], who is an adult individual and she is also the [petitioner's] sister-in-law, was staying with the [petitioner] and her sister, ..., in Sullivan County, Tennessee. She had young children there with her ... at the [petitioner's] residence. She would state that she woke up from a dead sleep with the [petitioner] lying either on her or beside her with her pants down digitally penetrating her vagina. [T.C.] would give a history of prior sexual assaults with this [petitioner], should it become relevant, reaching back into her minority when she lived with [her sister] and [the petitioner] and their children. She would state that she did not give her consent and was awakened to an offense already committed. She immediately told her sister. She immediately called the police. This was immediately turned over.

As to [Case No.] S51,180, the parties would stipulate that the offenses occurred on the dates as alleged in the indictments or presentments. The victim is [H.R.]. Her date of birth was August 28th, 1989. After [T.C.] came forward with her abuse within about a 24 hour period [H.R.] also told her mother that this had been also happening to her for some period of time. [H.R.] would go on to tell authorities that her abuse began in another jurisdiction back in the year 2000 and continued until the August 29th date when [T.C.] came forward.

[H.R.] ... gave details, although many more offenses occurred than the State has charged. The State took a diary and worked around significant dates in [H.R.'s] life to come up with the dates that we ultimately used. All of those events occurred either in the home in Sullivan County or in, by the lake in Sullivan County and the

3

earlier abuse, as I stated, occurred not only in Washington County, Tennessee but in another [s]tate that has been referred to, other jurisdictions, and that we do not know what they will do in those cases.

[H.R.] was also able to tell us that during the events which would occur at her home on every occasion the [petitioner], who was her father, would have her watch pornographic movies. She described in detail to us some of those specific movies. The State, various pornographic ... movies, in fact a whole box full of them, were recovered from the home and turned over to officers and on those tapes are the events or the scenes that [H.R.] would describe.

[H.R.] would state that she did not want to have sexual penetration and this would either be digital, oral or attempted penile penetration either on her or on him in each case; that ... it began when she was a young child and continuing until the present day, ... that she would not be able to go out, she would not be able to leave the house, she could not see her friends, she could not have a boyfriend or he would be mean to her family if she refused his sexual advances, that her life would have been, was made very difficult.

She did go to have a physical—the child is, although fully capable of testifying, is highly emotionally traumatized by the events and when we took her for the medical [examination] ... the doctor, without putting her to sleep, could not conduct a full pelvic exam but what she was able to see was very suspicious and did show some tiny tearing of the hymenal ring. But she just could not go further than that without putting the child under to complete the exam.

*Rishton*, 2012 WL 1825704, at * 1-2. Based on this factual recitation, the trial court accepted Petitioner's *Alford* pleas, convicted Petitioner of each count, and sentenced him to a total effective sentence of ten years, comprised of ten-year concurrent prison terms for each count in each case. *Id.* at *2.

## III.   STANDARD OF REVIEW

Adjudicated claims, such as most of the ones now before the Court, are evaluated under the review standards contained in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, which instruct a court considering a habeas claim to defer to any

4

decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *See id*. at 411; *see also Harrington v. Richter*, 562 U.S. 86,102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Because Claims 1 and 2 allege ineffective assistance of counsel, the Court will discuss them together for purposes of organization.

## IV.  DISCUSSION

### A.  Ineffective Assistance

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id*.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms."  *Id*. at 688.  A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id*. at 690.  The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  Thus, it is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.

6

When considering *Strickland*'s second prong, in the context of a guilty plea, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To demonstrate a reasonable probability that he would have gone to trial, a petitioner is required to present evidence apart from a lone assertion that, but for counsel's error, he would have pleaded not guilty and would gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995), *cert. denied*, 516 U.S. 1058 (1996); *see also Bray v. Andrews*, 640 F.3d 731, 738-39 (6th Cir. 2011) (finding that unsubstantiated, subjective statements by a petitioner and his counsel that petitioner would not have pleaded guilty, in light of the sparse record, will not support relief under the test in § 2254(d)(1)).

Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Yet, the core inquiry remains "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Finally, a petitioner asserting claims of "ineffective assistance of counsel under *Strickland* have a heavy burden of proof." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). "[W]hen a federal court reviews an ineffective-assistance claim brought by a state prisoner, the question is not simply whether counsel's actions were reasonable, 'but whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.'" *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 105). Moreover, because AEDPA applies, this Court's evaluation of the TCCA's decision on the ineffective

7

assistance claims is "'doubly deferential' . . . that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

### 1. The *Cronic*-Based Claim (Grounds One & Nine)

Rishton alleges, in his first claim of ineffective assistance, that the last minute appearance of counsel at his scheduled preliminary hearing, the belated appointment of the district public defender as his counsel, as opposed to appointing a specific attorney in the public defender's office, and the complete lack of communication with counsel for the first eleven months of his detention amounted to a "mere formal appointment," which was insufficient to satisfy his Sixth Amendment right to counsel and which resulted in demonstrable prejudice. Rishton cites to *United States v. Cronic*, 466 U.S. 648 (1984), as supporting authority for his claim.

Rishton raised this claim in his post-conviction appeal. Based on the record and Rishton's post-conviction testimony, the TCCA found that that the public defender's office was appointed to represent Rishton soon after his arrest; that, despite the fact that no individual attorney had been assigned to represent him exclusively, an attorney from the office was present at the preliminary hearing and gave him legal advice; and that Rishton accepted that advice. *Rishton*, 2012 WL 1825704, at *14. The TCCA further found that an attorney from that office filed a motion to reduce Rishton's bond, represented him at the bond hearing, and represented him at other court appearances. *Id.* As to Rishton's complaint regarding the failure of the public defender's office to select a specific attorney to represent him until after his indictment, the TCCA pointed out that in *Chambers v. Maroney*, 399 U.S. 42, 54 (1970), the Supreme Court declined "to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel." *Id.* at *14.

The TCCA observed that "a Sixth Amendment claim is sufficient without inquiry into counsel's actual performance at trial only when surrounding circumstances justify a presumption of ineffectiveness" before determining that the *Cronic* standard was unwarranted since at all critical stages of Petitioner's criminal proceedings he had had the benefit of the advice of counsel. Thereafter, the TCCA rejected his claim. *Id.*

As the TCCA indicated, there are three scenarios where *Cronic* applies: (1) a complete denial of counsel or a denial at a critical stage of the criminal proceedings, (2) constructive denial of counsel which occurs when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) counsel is available to assist, but the circumstances are such that even a fully competent counsel is unlikely to provide effective assistance. *Id.* at * 13. The rationale for presuming prejudice is that the circumstances involved in these situations are "'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *Cronic*, 466 U.S. at 658-59).

The Sixth Circuit has held that where counsel actively participates in the criminal proceedings, *Cronic* does not apply. *Millander v. Adams*, 376 F.3d 520, 524 (6th Cir. 2004). Indeed, courts of appeal have found the circumstances in which *Cronic* applies to be rare. *Fink v. Lockhart*, 823 F.2d 204, 206 (8th Cir. 1987) (citing cases). In fact, in *Cronic* itself, the Supreme Court remanded the case so that the ineffective assistance claim could be considered under *Strickland*, since the court of appeals had limited its review to counsel's overall performance, had not found any specific shortcomings, and had failed to determine whether "there had been an actual breakdown of the adversarial process." *Cronic*, 466 U.S. at 657-58, 666-667 and n.41.

Here, the TCCA found that the public defender's office and the attorney which the public

9

defender's office assigned to represent Rishton appeared and advised Rishton at the preliminary hearing, filed a bond reduction motion, and appeared and represented him at the bond hearing and on at least ten other court dates.

To prevail on this claim, Petitioner must show that the TCCA's rejection of his *Cronic*-derived ineffective assistance claim was not reasonable. This showing can be accomplished if Rishton points to a well-established rule in a Supreme Court case, which holds that, contrary to what the TCCA found, the circumstances which exist in his case justify a presumption of prejudice.

Because the Supreme Court has "not held that *Cronic* applies to the circumstances presented in this case," the Court finds that "federal habeas relief based upon *Cronic* is unavailable." *Woods v. Donald*, 135 S. Ct. 1372, 1378, 191 L. Ed. 2d 464 (2015). In other words, the TCCA did not unreasonably apply *Cronic* in rejecting Rishton's ineffective assistance claim.

## 2. The *Strickland*-Based Claims (Ground Two)

In this catch-all claim of ineffective assistance, Petitioner asserts that counsel failed to question any of the State's or defense's witnesses; failed to investigate the material facts which resulted in the failure to discover serious prosecutorial misconduct, exculpatory evidence, and evidence which was not disclosed and, which in turn led to Rishton's having a flawed understanding of the elements of his offenses; and failed to explain the elements of his offenses. It is also claimed that counsel shifted the burden of proof to Rishton, failed to explain how Rishton's prior felonies could be used to impeach him if he chose to testify, refused to file a speedy trial motion or a motion to dismiss, and failed to move to withdraw Petitioner's *Alford* plea, despite Petitioner's request that he do so within one week after Rishton signed his guilty

plea form. Petitioner has not fleshed out these habeas claims with any supporting contentions of fact or argument.

Therefore, given the absence of any factual allegations or developed argument, Petitioner's ineffective assistance claims have been insufficiently pled. Under Rule 2(c)(2) of the Rules Governing Section 2254 Proceedings, a petition must "state the facts supporting each ground." And the Supreme Court has explained that, to be entitled to habeas corpus relief, a petitioner must "state facts that point to a real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (citation and internal quotation marks omitted). Even so, to the extent that the ineffective assistance claims offered to this Court correspond to the claims resolved by the TCCA, the Court will look to the TCCA's adjudication of the claims to determine whether Petitioner is entitled to habeas relief under the AEDPA's standard of review for claims that were adjudicated in the state courts.

In the state courts, Petitioner maintained that his trial counsel failed to investigate further the results of H.R.'s medical examination, to investigate applicable law involving the use of his prior conviction for impeachment, to discover prosecutorial misconduct, to file a speedy trial motion, to explain the elements of the charges, and to move to withdraw his guilty plea. The TCCA prefaced its analysis of this multi-part ineffective assistance claim by quoting extensively from *Strickland* for the components of an ineffective assistance claim. Therefore, the TCCA's decision was not contrary to the relevant well-established rule in a Supreme Court case. *See Cullen*, 131 S. Ct. at 1403 (observing upon review of an ineffective assistance claim that "[t]here is no dispute that the clearly established federal law here is *Strickland v. Washington*").

Next, the TCCA detailed the post-conviction court's findings, which the TCCA accepted as its own. The lower state court had accredited trial counsel's testimony at the post-conviction

11

hearing, wherein trial counsel stated that he was experienced, had met with Petitioner at jail, communicated with Petitioner on the telephone and through letters, had filed for and obtained discovery, had met with the State, and had reviewed witnesses' statements. Additionally, trial counsel stated that he had prepared a motion to hire an investigator but that he did not go forward with the motion at Petitioner's request. Trial counsel averred that he explained to Petitioner the offenses, the possible sentences, and the specifics of the plea agreement.

Trial counsel said that he showed Petitioner the report from H.R.'s medical examination and that, in his professional opinion, the report was inconclusive and would not help Petitioner's case. Trial counsel related that he had discussed the speedy trial motion with Petitioner, but determined that, since the trials were set within six months, the motion would not be beneficial. Trial counsel stated that, after he received Petitioner's letter indicating that he wanted to withdraw his guilty plea, he discussed with Petitioner whether he should withdraw his plea, and that Petitioner decided to not withdraw his plea and to waive his sentencing hearing.

The TCCA found that, since the full record supported the post-conviction court's credibility determinations and conclusions, Petitioner had failed to show a deficient performance on the part of trial counsel. The TCCA declined relief on all of Petitioner's *Strickland* claims of ineffective assistance.

Though the TCCA did not explicitly address several of the claims presented, the state court found that none of Rishton's ineffective assistance claims warranted relief. The Supreme Court has held that when a state court addresses some of the claims raised by a petitioner but not a claim that is later raised in a federal habeas proceeding, it must be presumed that the state courts adjudicated the § 2254 claim on the merits, unless that presumption is rebutted. *Johnson v. Williams,* 133 S.Ct. 1088, 1091–1092, 185 L.Ed. 2d 105 (2013). Because that presumption

has not been refuted, the Court will rely on it and will review all ineffective assistance claims under § 2254(d).

Furthermore, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98; *see Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (observing that "[a] habeas court 'must determine what arguments or theories supported or ... could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court") (quoting *Harrington*, 526 U.S. at 102).

### a. Failure to Investigate (Medical Report)

The state courts' findings (i.e., that trial counsel showed Rishton the medical report at issue, had repeated conversations with Petitioner about the report, told him that it would not assist in getting him an acquittal, and had made a professional judgment, after reviewing the medical report, that the results in the report were inconclusive and not exculpatory or beneficial to the defense) are presumed correct, absent clear and convincing contrary evidence presented by Petitioner. No such evidence has been presented.

These findings support that trial counsel performed a thorough, reasonable investigation into the medical report and that he made a strategic decision not to pursue this line of defense, after determining that it would not help Petitioner's case. According to the Supreme Court, strategic decisions are especially onerous for a petitioner to attack. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

At any rate, given the presumption that counsel's challenged conduct must be considered sound trial strategy, as well as the difficulty encountered by a petitioner in challenging counsel's tactical decisions, the Court finds that Petitioner has not established that the TCCA's rejection of this claim was an unreasonable application of *Strickland*. *Hanna v. Ishee*, 694 F.3d 596, 612 (6th Cir. 2012) ("The burden rests on the [petitioner] to overcome the presumption that the challenged conduct might be considered sound trial strategy.") (citing *Strickland*, 466 U.S. at 689).

### b. Failure to Explain Use of Prior Conviction & Elements of the Charges

The TCCA iterated that trial counsel gave testimony at the post-conviction hearing, which was accredited by the trial court, that he advised Petitioner that proof of Petitioner's prior conviction could be used to impeach his testimony if he testified during trial, that he discussed the charges and their elements with his client, and that the trial court likewise explained the elements of the offenses before Petitioner entered his guilty plea.

The Supreme Court has observed:

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

*Marshall v. Lonberger*, 459 U.S. 422, 436 (1983) (quoting *Henderson v. Morgan*, 426 U.S. 637, 647 (1976)). The presumption that counsel has explained the nature of the charges to an accused prior to his admission of guilt seems an appropriate one to apply here.

The TCCA's adjudication of this claim was entirely reasonable under *Strickland*'s

14

guidelines, given the state courts' credibility findings, Petitioner's failure to provide any clear and convincing evidence to undercut those findings, and the presumption that counsel's actions fall within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Counsel cannot be found to have given ineffective assistance for failing to explain state evidentiary rules and state offense elements which, based on the TCCA's credibility findings, counsel in fact explained.

### c. Failure to Discover Prosecutorial Misconduct

Petitioner's assertions with respect to the claimed prosecutorial misconduct, as listed by the TCCA, were that the State intentionally failed to obtain material evidence, intentionally delayed presenting his case to the grand jury, and deceived the grand jury. The TCCA discussed the assertions as a freestanding claim (and the Court will follow suit later in this opinion). The TCCA then determined, essentially, that none of the allegations of prosecutorial misconduct had merit.

Giving the appropriate deference to the TCCA's decision with respect to whether prosecutorial misconduct occurred and to its determination that Petitioner had failed to show that counsel's performance was deficient, this Court finds that Petitioner has not established that TCCA unreasonably applied *Strickland* in making that determination. After all, counsel has no duty to assert a legally baseless claim, *see United States v. Martin*, 45 F. App'x 378, 381 (6th Cir. 2002); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and he cannot be ineffective when he does not raise the groundless claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001).

### d. Failure to File Motions (Speedy Trial & To Withdraw Guilty Plea)

Trial counsel testified, at the post-conviction hearing, that he had discussed the speedy trial motion with Petitioner, but determined that, since the trials were set within six months, the

15

motion would not be beneficial. Trial counsel stated that, after he received Petitioner's letter indicating that he wanted to withdraw his guilty plea, he discussed with Petitioner whether he should withdraw his plea, and Petitioner decided to not withdraw his plea and to waive his sentencing hearing.

The TCCA's adjudication of this claim was entirely reasonable under *Strickland*'s guidelines, in view of the state courts' credibility findings, of Petitioner's failure to provide any clear and convincing evidence to undercut those findings, and of the deference owed to an attorney's strategic decisions, of which counsel's choice not to file a speedy trial motion was one. Furthermore, the TCCA addressed Petitioner's freestanding claim that he was denied his right to a speedy trial (and the Court once again will follow suit later in the instant opinion) and determined that his speedy-trial right was not denied.

As observed earlier, counsel has no obligation to raise a legally baseless claim and does not render ineffective assistance by failing to raise such a claim. *Martin*, 45 F. App'x 378, at * 381; *Krist*, 804 F.2d at 946-47; *Greer*, 264 F.3d at 676.

## B. Prosecutorial Misconduct (Grounds Three & Five [part])

Rishton asserts that the prosecutor engaged in misconduct by (a) failing to turn over material evidence to the defense, (2) delaying the presentation of Petitioner's cases to the grand jury for indictment, which prejudiced his right to present a meaningful defense,[1] and (3) allowing false or misleading testimony to be presented to the grand jury, resulting in additional counts

---

[1] This second claim of prosecutorial misconduct was also offered as a distinct due process claim in Ground Five, supported by different contentions. The Court has combined Rishton's factual contentions with respect to the delayed-indictment claim and has included them in the instant discussion. Of course the allegations concerning the delay in appointment of counsel caused by a delay in the indictment were discussed earlier in this opinion in connection with the *Cronic* claim. All the overlap between Petitioner's claims has made the Court's task in addressing each separate claim more difficult.

being charged against him, which, but for the false testimony, would not have been charged.

### 1. H.R.'s Medical Report

In the TCCA, Petitioner claimed that the prosecution intentionally failed to obtain and disclose the results of H.R.'s medical examination and that, but for the belated disclosure of the report, he would not have pleaded guilty and would have insisted on going to trial.

The TCCA began its analysis of this claim by citing *Brady v. Maryland*, 373 U.S. 83 (1963), which held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process, where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*, 373 U.S. at 87. As the TCCA noted "[e]vidence is 'material' only if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to the defense." *Rishton*, 2012 WL 1825704, at *17 (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The TCCA next pointed to the post-conviction court's findings, to wit, that there had been a delay in the medical report being made available to the District Attorney, but that Petitioner had not shown that the report was in the prosecution's possession or that the delay was purposeful or otherwise done to prevent him from having adequate time to consider the report prior to trial or to his plea. The TCCA further pointed out that the trial court had also accredited Detective Russell's testimony that he was unaware of the report until the district attorney's office notified him that H.R.'s private physician had performed an examination. The TCCA iterated that, when the State became aware of the examination, it obtained a copy of the results and forwarded them to Rishton's attorney, who then discussed the report with him. The TCCA also noted that Petitioner knew of the report and its contents prior to entry of his guilty pleas and that, in trial counsel's judgment, the report was inconclusive. The TCCA concluded that Rishton had

not shown that the prosecution suppressed the report and that the report contained material evidence that was favorable to his defense.

*Brady* supplies the clearly established rule in Supreme Court cases which governs the disclosure of exculpatory evidence. *Mayfield v. Morrow*, 528 F. App'x 538, 542 (6th Cir*.) cert. denied sub nom. Mayfield v. Taylor*, 134 S. Ct. 530, 187 L. Ed. 2d 381 (2013); *Benn v. Lambert*, 283 F.3d 1040, 1052 (9th Cir. 2002) (noting that the rule on suppression of exculpatory evidence in *Brady* and its progeny is "a rule clearly established by controlling Supreme Court precedent"). There are three components of a *Brady* violation: (1) the evidence is favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence was suppressed by the state, either willfully or inadvertently; and (3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-83 (1999). Suppressed evidence is that which is "known to the prosecution but unknown to the defense at the time of trial." *Payne v. Bell*, 418 F.3d 644, 661 (6th Cir. 2005) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)). The prosecution cannot suppress evidence which it does not have, and "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

As the TCCA noted, Rishton was aware of the report and counsel discussed its contents with him prior to entry of his guilty pleas. Rishton has not cited to a Supreme Court case that shows the TCCA's disposition of his prosecutorial misconduct claim was contrary to or an unreasonable application of clearly established precedent. Nor could he since, as one circuit court has noted, "the Supreme Court has not addressed the question of whether the *Brady* right to *exculpatory* information, in contrast to *impeachment* information, might be extended to the guilty plea context." *United States v. Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010) (emphasis in

18

original) (discussing *United States v. Ruiz*, 536 U.S. 622 (2002), which held that the government is not obliged to disclose impeachment material prior to a guilty plea, but did not decide whether the prosecution has a duty to disclose exculpatory evidence before a plea).

Because the Supreme Court has not held that *Brady* and its progeny apply to the delayed disclosure of exculpatory evidence prior to a guilty plea, the TCCA's decision was not contrary to or an unreasonable application of clearly established federal law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (finding that, where there is no Supreme Court precedent deciding the issue presented, the state court decision cannot be contrary to or an unreasonable application of a clearly established governing rule in a Supreme Court case).

### 2. Delayed Indictment (Ground Five [Part])

In his next claim, Rishton argues that the prosecution delayed in presenting his cases to the grand jury. When the TCCA entertained this claim, it observed that that there was a delay between Petitioner's arrest and indictment of approximately seven months in one case and eleven months in the other, but that the post-conviction court had found that the delay was not so extensive as to violate due process. The TCCA likewise observed that Detective Russell, who investigated the cases and testified before the grand jury, had explained that the delay was due to the investigation of the allegations of sexual assault to ensure that the offenses occurred in Sullivan County. Nothing in the record, so stated the TCCA, altered that conclusion or showed that the delay was engendered by the prosecution's aim to obtain a tactical advantage. Applying the due process analysis set forth in *State v. Dunning*, 762 S.W.2d 142 (Tenn. Crim. App. 1988), which in turn was enunciated in *United States v. Marion*, 404 U.S. 307 (1971)*, see Dunning*, 762 S.W.2d at 144, and finding no due process deprivation, the TCCA denied relief.

The Sixth Circuit has summarized the law governing this claim:

In order to prevail on a claim of unconstitutional pre-indictment delay, a defendant must demonstrate that he suffered substantial prejudice to his defense as a result of the delay and that the prosecution intentionally delayed in order to gain a tactical advantage over him. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Where delay is investigative, rather than intentional in order to gain a tactical advantage, due process principles are not offended, even if the defense "might have been somewhat prejudiced by the lapse of time." *Lovasco*, 431 U.S. at 796, 97 S.Ct. 2044. In any due process inquiry based upon pre-arrest delay, "the particular circumstances of individual cases" must be evaluated. *Id*. at 797, 97 S.Ct. 2044; *see also Marion*, 404 U.S. at 325, 92 S.Ct. 455. Only those pre-indictment or pre-arrest delays that violate "those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency,' " are unconstitutional. *Lovasco*, 431 U.S. at 790, 97 S.Ct. 2044 (citations omitted).

*Smith v. Caruso*, 53 F. App'x 335, 336-37 (6th Cir. 2002). And, of course, both the reasons for the delay and the prejudice to the accused must be considered. *Lovasco*, 431 U.S. at 790, 97 S.Ct. 2044 (emphasis added).

Here, the TCCA cited to and applied the relevant legal rule in a Supreme Court case. And the TCCA reasoned that the delay was not of the length as to violate due process, that the delay stemmed from the need to investigate whether the offenses against Petitioner's stepdaughter occurred in the county in which the prosecution was proceeding, and that no proof in the record disclosed that the delay was motivated by a desire to gain a tactical advantage.

Petitioner will be entitled to relief if he can show that the state court's rejection of his allegations concerning the delay between his arrest and indictments was an objectively unreasonable application of the principles in *Marion* and *Lovasco*. To summarize the TCCA's findings, the delay was not attributable to any desire to gain a tactical upper-hand but to the need to investigate jurisdiction and (implicitly) that no prejudice had resulted from the delay. Rishton has not established that the TCCA's adjudication of his claim "was so lacking in justification that

20

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Harrington*, 562 U. S. at 103, and he therefore is not entitled to relief.

### 3. False Testimony

In his final claim of prosecutorial misconduct, Petitioner alleges that the State allowed false or misleading testimony to be presented to the grand jury, which resulted in additional criminal charges being lodged against him. As support for his claim, Petitioner seemingly relies on *Costello v United States*, 350 U.S. 359 (1955), where the Supreme Court rejected the argument that the Fifth Amendment was violated by an indictment based solely on hearsay.

In presenting his claim to the TCCA, Rishton argued "that the prosecution engaged in misconduct when it used unnecessary and improper hearsay testimony to obtain the counts in case number S51,180 that involved acts occurring between August 1, 2005 and August 29, 2005" and "that there was no evidence that offenses occurred between those dates." *Rishton*, 2012 WL 1825704, at *18.

The TCCA addressed and resolved this claim as follows:

> Detective Russell was the only person to testify at the grand jury hearing. The postconviction court accredited Detective Russell's testimony that he did not specifically recall testifying about incidents occurring in August 2005, but he could not say that he did not testify to such incidents. While the affidavit filed in general sessions court did not refer to any offenses in August, there was additional investigation, including an interview of the victim, before the State presented the case to the grand jury. Moreover, the facts recited by the State at the guilty plea hearing reflect that there was evidence that the sexual encounters continued until August 29, 2005, and the petitioner acknowledged that the State would have that evidence if there were a trial. The petitioner has failed to show that the prosecutors engaged in deception or that there was no evidence that some offenses occurred in August 2005. Thus, he is not entitled to relief on this issue.

*Rishton*, 2012 WL 1825704, at *18.

The Supreme Court has held that "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment." *Branzburg v. Hayes,* 408 U.S. 665, 688 n. 25 (1972) (*citing Hurtado v. California*, 110 U.S. 516 (1884)). Rishton's claim regarding the testimony offered in the Tennessee grand jury proceedings does not raise a cognizable claim.[2]  *See Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) (finding that "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court") (listing cases).

Because Petitioner's allegations do not raise a recognizable federal claim, there is no basis for § 2254 relief.

### C.  Denial of Right to Speedy Trial (Ground Four)

Rishton alleges that, in violation of the principles *in Barker v. Wingo*, 407 U.S. 514 91972), he was forced by unresponsive counsel to file a pro se motion for a speedy trial, which the trial court did not hear, and that the TCCA did not conduct the proper legal analysis under *Barker* in disposing of the claim when it was raised in his post-conviction appeal.

When Petitioner offered his claim to the TCCA, it applied the factors set forth in *Barker* to determine whether the delay in bringing Rishton's case to trial violated his Sixth Amendment speedy-trial rights.  The four factors which the TCCA considered were: (1) the length of the delay; (2) the reason for the delay; (3) Petitioner's assertion of the speedy-trial right; and (4) the prejudice caused to Petitioner by the delay.

The TCCA observed that the post-conviction court found that the seven-month and

---

[2] Even if the grand jury claim were cognizable, where a federal defendant challenges federal grand jury proceedings, which are secured by the Fifth Amendment, the Sixth Circuit has held that the "validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate, or hearsay." *United States v. Markey,* 693 F.2d 594, 596 (6th Cir. 1982).

eleven-month delays, which occurred between Petitioner's arrest and his indictment, were not extensive enough to deny him due process and that the delays were due to the need to investigate to determine the jurisdiction of the offenses. The TCCA found that Petitioner had failed to demonstrate that the indictment or trial date was delayed for a tactical advantage or to prejudice him. The TCCA likewise found that Rishton filed a pro se motion in July of 2006, asserting his right to a speedy trial but that, instead of hearing the motion, the trial could relieved the public defender's office of its then representation of Petitioner, appointed new counsel, and set the cases for trial within six months. The TCCA also pointed to trial counsel's testimony that Petitioner suffered no prejudice as a result of the delay and ultimately concluded that the record supported that Rishton was not denied his right to a speedy trial.

As the TCCA observed, the appropriate analysis for determining whether a defendant's right to a speedy trial has been denied is enunciated in *Barker v. Wingo*, 407 U.S. 514 (1972), which requires a court to apply a four-factor balancing test, which, in turn, weighs the conduct of both the prosecution and the defendant. *Id.* at 521. Because the state court relied on *Barker* as supplying the governing legal principle to a speedy-trial claim, its decision is not contrary to the well-established rule in a Supreme Court case. *Vermont v. Brillon*, 129 S. Ct. 1283 (2009) (applying *Barke*r to a review of a state prisoner's speedy trial claim).

As the state court found, the seven-month and eleven-month periods of delay were not presumptively prejudicial. *Cf. Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."). However, though the TCCA found that the delay was not presumptively prejudicial, it continued to apply the other *Barker* factors, though it need not have done so. *Cf. United States v. Williams*, 231 F.App'x.

457, 462 (6th Cir. Aug. 10, 2010) (observing that a delay of one year generally is presumed sufficiently prejudicial to invoke a weighing of the remaining *Barker* factors) (citing *United States v. Watford*, 468 F.3d 891, 901 (2006)).

The TCCA, having concluded that the delay was for investigative reasons, might have placed the second Barker factor on the State's side of the scales. Rishton asserted his speedy-trial rights in July of 2006 (a factor that falls slightly in his favor), and his guilty pleas were entered on November 6, 2006—some four months later, with his second appointed counsel at his side, who testified as to the lack of prejudice his client had sustained as a result of the delay (a factor that weighs in favor of the State).

Under 28 U.S.C. § 2254(d), '[w]hen assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The speedy-trial right "is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." *Barker*, 407 U.S. at 521. Also "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id*. at 530. And "a valid reason," such as that found by the TCCA, "should serve to justify appropriate delay. *Barker*, 407 U.S. at 531.

In recognition of the "leeway [state] courts have in reaching outcomes in case-by- case determinations," when applying general legal rules, *Yarborough*, 541 U.S. at, 664, such as *Barker*'s speedy-trial analysis, this Court finds that the TCCA's rejection of Rishton's claim was neither an unreasonable application of *Barker* nor based on an unreasonable determination of the

facts presented to the state courts. No writ will issue with respect to this claim.

### D. Denial of Full and Fair Post-Conviction Hearing (Ground Six)

Rishton asserts that he was denied compulsory process for some of the witnesses he needed at the post-conviction hearing and was not allowed to call other witnesses who were present and able to testify at the post-conviction hearing, thereby denying him a full and fair hearing on some of his claims. Petitioner has failed to state a cognizable federal claim.

There is no constitutional requirement that states provide an appeal process for criminal defendants seeking to review alleged trial court errors. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985). Nor is there a constitutional duty to provide for post-conviction relief since "[p]ostconviction relief is even further removed from the criminal trial than is discretionary direct review," as "[i]t is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature." *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987) (citation omitted).

Thus, Petitioner's assertions with regard to the post-conviction court's rulings on compulsory process for witnesses and calling witnesses are not recognizable habeas corpus claims. *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (finding that claims involving constitutional violations during post-conviction proceedings did not relate to a prisoner's detention and, therefore, were not cognizable under § 2254); *see also Cress v. Palmer* , 484 F.3d 844, 853 (6th Cir. 2007) ("[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.") (citing, *inter alia* , *Kirby* , 794 F.2d at 247). Furthermore, one circuit court has concluded "that the Confrontation Clause does not apply to state post-conviction proceedings." *Oken v. Warden, MSP*, 233 F.3d 86, 93 (1st Cir. 2000).

E.    **Invalid Guilty Pleas (Ground Seven)**

In this claim, Rishton maintains that he did not enter into his plea agreement knowingly and intelligently because of the delay in disclosing H.R.'s medical report, which he saw only minutes before he signed the agreement.  Days after he signed the agreement, he asked counsel to request a plea withdrawal.  Also leading to Rishton's invalid plea was counsel's failure to inform him as to the elements of his offense and to explain that certain elements were unsatisfied in his case.  Petitioner claims that, but for these alleged errors on the part of his court-appointed attorney, he would not have pleaded guilty but would have insisted on proceeding to trial.

Notably, in the TCCA, Rishton argued that counsel's failure in seeking the medical report resulted in his entry of an involuntary and unknowing guilty plea, but he did not allege that counsel's alleged failure to advise him as to the elements of his offense played a part in the claimed unconstitutional pleas.  The Court will review the claim as it was offered to the TCCA. The Court will not entertain Rishton's allegations as to the effect counsel's failure to explain the elements had on his ability to validly enter into the plea agreement since they have been procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (finding that a failure to exhaust a federal claim by presenting it first to state courts amounts to a procedural default where no state remedies are left to exhaust); *see also* Tenn. Code Ann. § 40-30-102(a) and (c) (respectively setting a 1-year limitations statute on the filing of a post-conviction petition and allowing the filing of only one post-conviction petition).

When Rishton carried the medical-report component of his challenge to the validity of his guilty plea to the state appellate court during post-conviction review, the TCCA first cited the relevant Supreme Court precedent (*Boykin*) and a line of state court cases involving the legality of guilty pleas as the controlling law.  The guilty plea law in the state court cases was in all

26

respects the same or similar to the constitutional principles enunciated in the *Boykin* line of cases.

In reviewing this claim, the TCCA pointed to the record as demonstrating that Rishton, both verbally and in writing, communicated ideas well, as shown by his pro se briefs on appeal. The TCCA also mentioned that Rishton had familiarity with the criminal process, as he had pled guilty to offenses in the past. Furthermore, the transcript from Petitioner's guilty plea hearing indicated that he was advised of his constitutional rights and of those rights which he was waiving by pleading guilty. Rishton had assured the trial court, during the plea taking hearing, that he had discussed his plea agreement with his attorney and that he understood the terms of the agreement and the constitutional rights he was waiving. Petitioner also avowed that he was freely and voluntarily entering the plea because he believed it to be in his best interest to plead guilty.

The TCCA, commenting that that the post-conviction court had accredited Rishton's responses at his plea hearing over his post-conviction hearing testimony, found that there was nothing to undercut the reliability of his guilty plea testimony. Pointing out that "[s]olemn declarations in open court carry a strong presumption of verity" such as those Rishton had made in his guilty plea hearing, the TCCA determined that the record disclosed that his plea was knowingly, intelligently, and voluntarily entered. *Rishton,* 2012 WL 1825704, at *17 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

In the seminal Supreme Court case on guilty pleas, the Supreme Court observed that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S.238, 242 (1969). Because of the substantial consequences flowing from a

27

plea of guilty and to ensure that a plea is voluntary and knowing, a trial court must ascertain, prior to accepting such a plea, whether a defendant understands that he is waiving three separate rights—the right to a trial by jury, the right to confront his accusers, and the privilege against self-incrimination.  *Id.* at 243-44.  Whether a plea is constitutionally permissible depends upon the particular facts of each case, but it is essential that a defendant be sufficiently aware of the relevant circumstances and the probable and direct consequences of his plea, *Brady v. United States*, 397 U.S. 742, 748-49 (1979), and that the plea represents "a voluntary and intelligent choice among available alternatives."  *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  Likewise, for "a plea agreement to be constitutionally valid, a defendant must have entered into the agreement knowingly and voluntarily."  *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003).

Here, as the TCCA observed, the record showed that the trial court advised Rishton of the rights he was waiving by pleading guilty and that he indicated that he understood those rights and the terms of the plea agreement, which he had discussed with his attorney.  Acknowledging that he knew and understood those rights and the provisions in the plea agreement, Rishton affirmed that he had decided that it was in his best interest to enter those pleas and that he was doing so voluntarily.  The TCCA pointed to the post-conviction court's credibility determination with respect to  Rishton's testimony at the post-conviction evidentiary hearing.  *United States v. Jimenez-Dominguez*, 296 F.3d 863, 869 (9th Cir. 2002) (noting the difficulty in probing a petitioner's subjective state of mind and observing that the "the best evidence of his understanding when pleading guilty is found in the record of the [plea] colloquy").  This credibility finding is entitled to special deference by this Court.  *See Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *see also Rice v. Collins*, 546 U.S. 333, 342 (2006) ("Reasonable minds

reviewing the record might disagree about [a petitioner's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

As the TCCA held, the record establishes Petitioner entered his pleas of guilty voluntarily and with knowledge of the consequences and its decision that the pleas were constitutionally valid was not an unreasonable application of the clearly established relevant rule in Supreme Court jurisprudence.[3] The writ will not issue with respect to this claim.

### F. Abuse of Discretion - Post-Conviction Court (Ground Eight)

In this claim, Petitioner maintains that the trial court judge abused her discretion in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. More specifically, Petitioner avers that the trial court judge, after Petitioner filed a pro se motion complaining about the lack of communication between counsel and himself, abused her discretion by arbitrarily removing said counsel and appointing new counsel. Petitioner suggests that, since neither he nor his attorney requested substitution of counsel, the trial court should have first inquired into the validity and seriousness of Petitioner's complaints, held a hearing on the record, made findings of fact and conclusions of law to support the substitution of counsel, and ensured that Petitioner's constitutional and procedural rights were protected. Petitioner alleges that he presented and exhausted his claim in state courts but that the state courts did not issue any findings with respect to his claim.

Petitioner has not cited to a clearly-established rule in a Supreme Court case which requires the above elaborate, multi-step process prior to substitution of counsel and the Court is

---

[3] A petitioner's allegation that he did not knowingly and voluntarily enter into a plea agreement typically is made to challenge a waiver provision in the agreement and, in this context, courts examine the guilty plea itself to determine whether the plea was knowing and voluntary. *United States v. Rollings*, 751 F.3d 1183, 1186 (10th Cir. 2014) (observing that a court may look to whether the plea was knowing and voluntary in deciding whether the plea agreement was entered voluntarily and intelligently).

29

unaware of one. *See Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) (noting the lack of a citation to a case supporting that a state court's alleged abuse of discretion with respect to a motion to withdraw a jury-trial waiver results in a constitutional violation).

If the source of this sequenced process for substitution of counsel is state law, then Rishton's claim that the state court abused its discretion in failing to afford him that process is not cognizable in this federal habeas corpus case. *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (noting the long recognition of the principle that "a 'mere error of state law' is not a denial of due process"); *Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998) (finding that federal habeas review is limited to whether there was a constitutional violation and does not extend to whether the state court abused its discretion). The interpretation of state law lies within the exclusive purview of state courts, since those courts are the final arbiters of state law. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A federal court does not sit "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

To the extent that this claim was exhausted in state court and to the extent that Petitioner states a cognizable constitutional violation, it does not entitle him to a writ of habeas corpus.

## IV. CONCLUSION

For the above reasons, this pro se state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner

whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis upon which is based the dismissal of a few claims and the law upon which is based the dismissal on the merits of the rest of the claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims. *Id*. Because reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the Court will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE ORDER WILL ENTER**.

**ENTER:**

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
